Jason Cabot
388 Beale St., Apt 1407
San Francisco, CA 94105
frcabot@gmail.com
Tel: 213-270-4815

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jason Cabot,<br><br>            Plaintiff,<br><br>    vs.<br><br>William Lewis; Does 1-100.<br><br>            Defendants. | ) **COMPLAINT AND JURY TRIAL**<br>) **DEMAND**<br>)<br>) CIVIL ACTION<br>)<br>) NO. _____<br>)<br>) Count I - 42 U.S.C. § 1983<br>) Count II - MCRA<br>) Count III - Battery<br>) Count IV - Assault<br>) Count V - False Imprisonment<br>) Count VI - False Arrest<br>) Count VII - IIED<br>) Count VIII - Defamation<br>) Count IX - Abuse of Process<br>) Count X - Malicious Prosecution |

## COMPLAINT

1.      This is an action for damages pursuant to 42 U.S.C. § 1983 and associated state law statutory and common law claims arising from a false arrest, on August 8, 2011, by William Lewis, Massachusetts State Police Trooper, and other unknown Defendants.

## PARTIES

2.      Plaintiff Jason Cabot (hereinafter "Cabot"), is a California citizen, residing at 388 Beale St., Apt 1407, San Francisco, CA 94105. Mr. Cabot has never been convicted of any crime.

3.      Defendant William Lewis (hereinafter "Lewis") is a trooper with the Massachusetts State Police. As of 2011, Lewis was stationed at Troop F, Logan International Airport, 2 Service Road, East Boston MA 02128.

Complaint - 1

4. Does 1-100 are other Defendants who assisted Lewis in his false arrest, and who will be named after their identities are discovered.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution and the laws of the United States, namely 42 U.S.C. § 1983.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000, and is between a citizen of California and citizens of Massachusetts.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343 as the Defendants have deprived, under color of state law, the rights of Plaintiff secured by the Constitution of the United States.

8. This Court has supplemental jurisdiction over state claims pleaded in this action, pursuant to 28 U.S.C. § 1367, as they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

## FACTUAL BACKGROUND

9. On August 8, 2011 at approximately 1 AM, Mr. Cabot flew into Boston Logan airport, arriving on a flight from San Francisco, CA.

10. Mr. Cabot had spent the summer working as a "summer associate" for a law firm based in San Francisco, and was returning to the Boston area, where he resided at the time, upon the conclusion of his summer employment.

11. Shortly after his arrival, and while loading his luggage into his vehicle, driven by a friend -- Maksim Sigal -- Mr. Cabot was rudely accosted by an unknown state police trooper.

12. Upon recovering his belongings, Mr. Cabot and Mr. Sigal drove to the Troop F barracks so Mr. Cabot could file a complaint against the unknown state police trooper.

13. Mr. Cabot spoke to another unknown state police trooper at the reception (believed to be Trooper Fallon or Fallow), who instructed him to wait in the lobby area. Mr. Cabot complied with that request, and patiently sat in the lobby reading a book on his kindle e-book device.

14. After approximately 15 minutes, Lewis entered from the barracks from the outside.

15. Lewis apparently took offense, as Mr. Sigal -- who was waiting outside -- had *just* called Mr. Cabot on his cell phone. Mr. Sigal could not enter the barracks because he was supervising and remaining with Mr. Cabot's dog outside, who had accompanied Mr. Cabot on the flight to Boston from San Francisco.

16. Mr. Sigal's purpose in calling Mr. Cabot was to inquire how long he would have to wait.

17. Immediately as he entered the barracks, and without introducing himself, Lewis demanded to know, in an extremely aggressive tone, whether Mr. Cabot was on the phone with the person (Mr. Sigal) outside. Mr. Cabot answered in the affirmative.

18. Lewis responded aggressively, "that's ridiculous!" Lewis proceeded behind a secure area, and began ridiculing Mr. Cabot and Mr. Sigal loudly. Mr. Cabot believed he heard Lewis refer to Mr. Cabot and his friend as "faggots."

19. Upon information and belief, there were no rules against cell phone usage by persons in the lobby, and Lewis did not mention any such restrictions. He simply found it "ridiculous" that Mr. Sigal had called Mr. Cabot, when they were in close proximity to each other (although Mr. Cabot was waiting in the lobby inside, as instructed, and Mr. Sigal was remaining outside with the dog).

20. Fearful of aggravating the trooper, Messrs. Cabot and Sigal discontinued their telephone conversation.

21. After approximately ten more minutes, Mr. Sigal entered the barracks, and asked Mr. Cabot how much longer they would have to wait. Mr. Cabot replied that he did not know.

22. Mr. Sigal approached the reception desk, to inquire himself how long the wait would be.

Complaint - 3

23.    This time, Lewis came the reception desk (from inside the secure area). Lewis barked at Mr. Sigal, "Weren't you told to take a seat and wait?" (In fact, no trooper had previously spoken to Mr. Sigal.) Mr. Sigal replied, "I think that's what you told my friend." Lewis angrily shouted "SO THEN SIT DOWN AND SHUT UP!"

24.    At this point, frustrated at the treatment they had now received from two separate troopers, Mr. Cabot went up to Mr. Sigal at the reception desk, and asked for Lewis' name.

25.    Lewis refused to prove his name, and instead threateningly shouted "You want my name?? I'll give you my name!"

26.    Lewis then immediately came out from the secure area. Mr. Cabot believed that Lewis would assault him and Mr. Sigal, or start some kind of altercation, as Lewis' tone and demeanor were extremely aggressive and frightening. As a result, Mr. Cabot took out his cell phone, with the intention of exercising his constitutionally protected right to videorecord Lewis, in order to protect his personal safety. Mr. Cabot was therefore holding his cell phone with one hand, and his kindle with the other.

27.    Lewis approached Mr. Cabot very closely, within a few inches, and angrily yelled in Mr. Cabot's face. In fact, Lewis was standing so closely, and yelling with such vigor, that spittle was actually flying in Mr. Cabot's face.

28.    Mr. Sigal and Mr. Cabot explained that they weren't sure what the problem was, and did not understand why Lewis was so upset.

29.    At this point, Mr. Cabot observed Lewis' name on his uniform, and informed him that he would file a complaint with his supervisor.

30.    Lewis became even more enraged, and told Mr. Cabot to "shut up before you have a complaint issue against you."

31.    It was clear from Lewis' words, conduct and tone that he intended to file a false complaint against Mr. Cabot because Mr. Cabot had asked him for his name and told him that he would report his behavior to Lewis' supervisor.

Complaint - 4

32.     Mr. Cabot protested that he had not done anything wrong, and that there was no cause to issue a complaint.

33.     Lewis demanded to know Mr. Cabot's age, because Mr. Cabot was "acting like a baby who just goes around filing complaints." Mr. Cabot responded that he had no obligation to give Lewis his age.

34.     Lewis then yelled, at the top of his lungs, "GIVE ME YOUR AGE!!," and Mr. Cabot responded that he would not.

35.     At this point, enraged, and his face red, Lewis shouted "that's it, I'm placing you under arrest!"

36.     Mr. Cabot asked, "For what?"

37.     Lewis responded that Mr. Cabot had "chestbumped" him, and then forcefully shoved Mr. Cabot against the wall.

38.     Lewis proceeded to falsely arrest Mr. Cabot, without probable cause, at approximately 2 AM on August 8, 2011.

39.     Another trooper (Fallon or Fallow) then emerged from the secure area and assisted Lewis in his false arrest and battery on Mr. Cabot.

40.     Lewis and the other trooper used such force on Mr. Cabot that it caused Mr. Cabot's t-shirt to rip.

41.     In the subsequent police report, Lewis falsely reported not only that Mr. Cabot had "chestbumped him," but also that Mr. Cabot's hands were "balled into fists."

42.     In fact, Mr. Cabot was holding his cell phone in one hand, and a kindle in another, and it would have been completely impossible for Mr. Cabot's hands to have been "balled into fists," as Lewis falsely claimed.

43.     Mr. Cabot never touched, chestbumped, or made contact with Mr. Lewis in any way. Nor did Mr. Cabot ball his hands into fists.

44.     Lewis is significantly taller than Mr. Cabot.

45.    Lewis and the Doe Defendants handcuffed Mr. Cabot, and kept him handcuffed for several hours.

46.    Lewis and the Doe Defendants forced Mr. Cabot to fully undress (including forcing Mr. Cabot to remove his underwear), and strip searched Mr. Cabot.

47.    Lewis and the Doe Defendants held Mr. Cabot, without probable cause and against his will, in a locked cell until approximately 9 AM. Mr. Cabot was not granted access to his blood pressure medication.

48.    Lewis and the Doe Defendants then transported Mr. Cabot to the East Boston Municipal Court, where Mr. Cabot continued to be held, in leg chains, until he was released on his own recognizance at approximately 1 PM on August 8, 2011.

49.    Mr. Cabot was falsely and maliciously charged by Lewis and Doe Defendants with "Assault and Battery on a Police Officer."

50.    Mr. Cabot vigorously contested the charge, and ultimately it was dismissed.

51.    Mr. Cabot experienced and continues to experience significant emotional distress and mental anguish, including humiliation, indignity, shame, anxiety, fearfulness, and other mental suffering.

## COUNTS

### Count I – 42 U.S.C. § 1983

52.    Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

53.    Lewis and the Doe Defendants, under color of Massachusetts law, subjected Mr. Cabot to the deprivation of rights, privileged and/or immunities secured by the Constitution of the United States.

54.    Lewis and the Doe Defendants falsely arrested, detained, and charged Mr. Cabot, because Mr. Cabot asked for Lewis' name and said that he would file a complaint against Lewis with Lewis' supervisor, and therefore deprived Mr. Cabot of his right to free speech.

55.    Lewis and the Doe Defendants violated Mr. Cabot's privacy rights and rights to be free from unreasonable searches and seizures by falsely arresting, detaining, and charging Mr. Cabot, and by strip searching Mr. Cabot when Mr. Cabot had not committed a crime, and when Lewis and the Doe Defendants lacked probable cause to make an arrest.

56.    Lewis and the Doe Defendants deprived Mr. Cabot, *inter alia*, of rights under the First, Fourth, and Fourteenth Amendments to the US Constitution.

57.    As a result of Defendants' conduct, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

58.    Lewis and the Doe Defendants exhibited reckless or callous disregard for Mr. Cabot's constitutionally-protected rights, and Mr. Cabot is entitled to, and seeks, punitive damages, in addition to compensatory and other damages.

## Count II – Massachusetts Civil Rights Act (MCRA) Action (M.G.L. c. 12 § 11I)

59.    Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

60.    Lewis and the Doe Defendants interfered by threats, intimidation, or coercion, with the exercise or enjoyment by Mr. Cabot of rights secured by the constitution of laws of the United States, and/or of rights secured by the Constitution or laws of the Commonwealth.

61.    Lewis and the Doe Defendants interfered, *inter alia*, with Mr. Cabot's rights under Articles XII through XIV of the Declaration of Rights contained within the Constitution of the Commonwealth of Massachusetts; and the First, Fourth, and Fourteenth Amendments to the US Constitution.

62.    As a result of Defendants' interference with Mr. Cabot's rights, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

## Count III – Battery

63.    Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

64.    Lewis and the Doe Defendants willfully and intentionally committed a harmful and/or offensive touching on Mr. Cabot, without justification or Mr. Cabot's consent.

65. Lewis and the Doe Defendants are liable for battery.

66. As a result of Defendants' battery, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

### Count IV – Assault

67. Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

68. Lewis and the Doe Defendants willfully and intentionally committed overt, threatening, and menacing acts, which placed Mr. Cabot in apprehension of immediate physical harm, without justification or Mr. Cabot's consent.

69. Lewis and the Doe Defendants are liable for assault.

70. As a result of Defendants' assault, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

### Count V – False Imprisonment

71. Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

72. Lewis and the Doe Defendants willfully and intentionally imprisoned Mr. Cabot, without probable cause, and without Mr. Cabot's consent.

73. Lewis and the Doe Defendants are liable for false imprisonment.

74. As a result of Defendants' false imprisonment, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

### Count VI – False Arrest

75. Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

76. Lewis and the Doe Defendants willfully and intentionally arrested Mr. Cabot, without probable cause.

77. Lewis and the Doe Defendants are liable for false arrest.

78. As a result of Defendants' false arrest, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

## Count VII – Intentional Infliction of Emotional Distress

79.    Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

80.    Lewis and the Doe Defendants willfully and intentionally inflicted emotional distress on Mr. Cabot.

81.    Lewis' and the Doe Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

82.    Lewis' and the Doe Defendants' conduct caused Mr. Cabot severe emotional distress, of a nature that no reasonable man could be expected to endure it.

83.    Mr. Cabot required significant therapy and counseling as a direct result of Lewis' and the Doe Defendants 'conduct.

84.    Lewis and the Doe Defendants are liable for intentional infliction of emotional distress.

85.    As a result of Defendants' intentional infliction of emotional distress, Mr. Cabot suffered damages in an amount to be proved at trial.

## Count VIII – Defamation

86.    Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

87.    Lewis and the Doe Defendants published a defamatory statement about Mr. Cabot, namely that he had committed assault and battery on a police officer.

88.    This statement was published, *inter alia*, in a police report and also in publicly accessible court records.

89.    This statement was materially false.

90.    Lewis and the Doe Defendants knew this statement to be false.

91.    Lewis and the Doe Defendants are liable for defamation.

92.    As a result of Defendants' defamation, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

## Count IX – Abuse of Process

93.    Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

94.     Lewis and the Doe Defendants used the criminal legal process against Mr. Cabot, for an ulterior or illegitimate purpose.

95.     Lewis and the Doe Defendants are liable for abuse of process.

96.     Mr. Cabot was forced to expend significant time and expense in his criminal defense.

97.     As a result of Defendants' abuse of process, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

**Count X – Malicious Prosecution**

98.     Plaintiff restates and incorporates herein the allegations of all proceeding paragraphs.

99.     Lewis and the Doe Defendants maliciously instituted a criminal proceeding against Mr. Cabot, for an improper purpose.

100.    Lewis and the Doe Defendants lacked probable cause to institute that proceeding.

101.    The criminal proceeding terminated favorably to Mr. Cabot.

102.    Mr. Cabot was forced to expend significant time and expense in his criminal defense.

103.    As a result of Defendants' malicious prosecution, Mr. Cabot suffered damages, in an amount to be proved at trial, including for emotional distress.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, the Plaintiff prays:

a. That Defendants be held jointly and severally liable;

b. That Plaintiff recover for actual damages, assumed or presumed damages where recoverable, and punitive damages where recoverable;

c. That Plaintiff be awarded reasonable attorney's fees, should one be retained;

d. That Plaintiff be awarded the costs of this action;

e. That Plaintiff be awarded pre- and post-judgment interest as permitted by law;

f. That Plaintiff recover a declaratory judgment that he did not commit an assault and battery on Lewis, and that he is factually innocent of the criminal charge orchestrated by Defendants;

g. That the Court order such other relief as it deems proper and necessary.

**Plaintiff demands a jury trial on all counts.**

Dated this    August 7, 2013

Jason Cabot
388 Beale St., Apt 1407
San Francisco, CA 94105
(213) 270-4815
frcabot@gmail.com

Complaint - 11