UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JASON CABOT,                        )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Civil Action No. 13-CV-11903-FDS
                                    )
WILLIAM LEWIS, et al.,              )
                                    )
            Defendants.             )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE AND ERIK BENNETT'S MOTION TO QUASH SUBPOENA

The mental impressions and legal reasoning of a prosecutor are protected from disclosure by the work product doctrine and various other privileges. The plaintiff, Jason Cabot, has issued a subpoena to Erik Bennett, a former Suffolk County Assistant District Attorney and current Massachusetts Assistant Attorney General, seeking deposition testimony and documents concerning a 2011 criminal complaint against Mr. Cabot for assault and battery on a police officer. Furthermore, the subpoena was not properly served. In order to protect the Commonwealth's privileged information, the Court should quash the subpoena.

## I.       BRIEF FACTUAL BACKGROUND

Mr. Cabot has sued William Lewis, a former Massachusetts State Trooper, and John Does 1 – 100 for violations of his state and federal civil rights and a number of torts. *See* Complaint, ECF Document No. 1, ¶ 1. In summary, Mr. Cabot alleges that, early in the morning on August 8, 2011, he went to the Massachusetts State Trooper Troop F Headquarters to file a complaint against an unknown trooper who had treated him rudely at Logan Airport. *See id*., ¶¶ 9 – 13. He further alleges that, while at the headquarters, Mr. Lewis took exception to his

1

behavior, shouted at him, and arrested him without cause. *See id.*, ¶¶ 14 – 20. Mr. Cabot also claims that Mr. Lewis and other unknown defendants strip-searched him and falsely charged him with assault and battery on a police officer. *See id.*, ¶¶ 46 – 49. The criminal complaint against Mr. Cabot was dismissed once he completed three months of pretrial probation and submitted a letter of apology. *See* Boston Municipal Court Criminal Docket No. 1105CR001085, a copy of which is attached as *Exhibit A*, pp. 5 – 7.

On August 9, 2013, Mr. Cabot filed his complaint. *See* Complaint, p. 1. On March 8, 2014, he e-mailed Erik Bennett, the former Assistant District Attorney who handled the prosecution. *See* March 8, 2014 Cabot E-Mail, a copy of which is attached as *Exhibit B*. In the e-mail, Mr. Cabot stated that he wanted information regarding the reasons why allegedly exculpatory videotape evidence was not produced during discovery in his criminal matter; the basis for the alleged claim that the evidence did not exist; and the reasons why the case was dismissed. *Id.* The e-mail further stated:

> I would like to have an amicable and voluntarily [sic] discussion with you regarding this matter. Please understand that at this point we have no intention of naming you or of your colleagues as defendants, as we believe you or your colleagues were likely misled by Lewis or the State Police. However, if you are not willing to cooperate with this investigation, we will have no choice but to compel your attendance at a deposition. I would therefore appreciate it if you got in touch with me, no later than March 12, 2014, to discuss this matter.

*Id.*

Approximately 2.5 hours later, Mr. Cabot's attorney, Tarek Abdel-Aleem, sent a follow-up e-mail to Mr. Bennett intending to attach a deposition subpoena, but in fact attaching a document subpoena directed at the custodian of records for the Suffolk County District Attorney's Office ("SCDAO") and an order issued by Magistrate Judge Jennifer C. Boal in an

unrelated matter.[1]  *See* First March 8, 2014 Abdel-Aleem E-Mail, a copy of which is attached as *Exhibit C*.  Minutes later, Mr. Abdel-Aleem e-mailed the correct subpoena commanding Mr. Bennett to appear for a March 24 deposition and bring with him "[a]ny and all documents, communications, writings, letters, e-mails, memoranda, etc. relating to the prosecution of Jason Cabot . . . and/or concerning communication between you, William Lewis and/or the Mass. State Police relating to that case."  *See* Second March 8, 2014 Abdel-Aleem E-Mail and Attached Subpoena, copies of which are attached as *Exhibit D*.  Mr. Bennett did not consent to electronic service and was not provided with the fee for attendance or mileage as required by Fed. R. Civ. P. Rule 45(b)(1).  *See* Affidavit of Christopher Hurld, a copy of which is attached as *Exhibit E*, ¶ 2.  He is no longer an Assistant District Attorney for Suffolk County and has no responsive documents in his possession, custody, or control.  *Id.*, ¶ 3.

On Thursday, March 13, Christopher Hurld, counsel for Mr. Bennett and SCDAO, called Mr. Abdel-Aleem to discuss the subpoenas and left a voicemail.  *Id.*, ¶ 4.  The next day, Mr. Hurld informed Mr. Abdel-Aleem that he likely would file a motion to quash the subpoenas because they sought privileged information.  *Id.*, ¶ 5.  Mr. Abdel-Aleem stated that he would have to consult with his client but asked whether Mr. Hurld could agree to a compromise in which Mr. Bennett would answer only questions regarding the reason the criminal charge against Mr. Cabot was dismissed.  *Id.*  Mr. Hurld replied that he would consult with his office, but that a compromise on those terms was unlikely because such information is protected by a number of

---

[1] This subpoena was served by hand on the SCDAO on March 10, 2014.  Pursuant to Fed. R. Civ. P. Rule 45(d)(2)(b), the SCDAO will serve written objections to the subpoena on a number of grounds including that the information sought is subject to the same privileges discussed in this memorandum and because it is otherwise overly broad, unduly burdensome, and seeks documents and things that should be more readily available from either Mr. Lewis or the Massachusetts State Police.

privileges. *Id*. On March 20, 2014, Mr. Hurld left Mr. Abdel-Aleem a voicemail confirming that he would file a motion to quash the subpoena directed to Mr. Bennett and would serve written objections to the document subpoena served on the SCDAO. *Id*., ¶ 6.

## II.     ARGUMENT

Fed. R. Civ. P. Rule 45(d)(3) states: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . ." The testimony and documents Mr. Cabot seeks from Mr. Bennett are protected by the work product doctrine, the deliberative process privilege, and the Massachusetts state law privilege for communications made to secure the enforcement of the law. The subpoena at issue also suffers from the procedural flaw of improper service.

### A.     The work product doctrine protects Mr. Bennett's mental impressions from disclosure.

The work product doctrine was initially recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The goal of the work product doctrine is to allow a lawyer to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id*. at 511. The Court acknowledged that a lawyer's "work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ." *Id*. Absent protection, "[a]n attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. . . . And the interests of the clients and the cause of justice would be poorly served." *Id*.

Although the codification of the work product doctrine found in Fed. R. Civ. P. Rule 26(b)(3) appears by its terms to apply only to documents and other tangible things, courts have held that the intangible work product of a lawyer's thoughts, opinions, and legal reasoning is also protected by the doctrine and that testimony about such matters may not be compelled. *See generally* 10 FED. PROC., L. ED. § 26:196. *See, e.g. Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1 (D.D.C. 2004) ("Questions of a witness that would disclose counsel's mental impressions, conclusions, opinions or legal theories may be interdicted to protect 'intangible work product.'"); *Russell v. General Elec. Co.*, 149 F.R.D. 578 (N.D. Ill. 1993) ("[A]ny questions which tend to reveal defense counsel's mental impressions of the case are improper."); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578 (N.D. N.Y. 1989) ("[P]rotected work product contained in documents and tangible things cannot be obtained through less tangible methods such as the deposition questioning of persons with knowledge of the protected information."). This protection of intangible work product is necessary to achieve the goal of keeping a lawyer's thoughts in preparation for possible litigation inviolate; the doctrine would provide scant protection if it could be circumvented by requiring oral testimony about information that would otherwise be protected in written form.

The work product doctrine protects disclosure of work product in later proceedings generally and specifically when information about a prosecutor's decision is sought in a later civil trial. *See generally In re Murphy*, 560 F.2d 326, 335 (8th Cir. 1977) ("the work product privilege extends to documents prepared in previous, unrelated litigation"); *Federal Election Comm'n v. Christian Coal.*, 179 F.R.D. 22, 24 (D.D.C. 1998) ("the more considered view appears to be that work product protection applies (1) to materials prepared for any litigation and that (2) . . . the protection survives the termination of the litigation for which it was prepared, and

that under the rationale of *Hickman*, non-parties should be able to assert work product privilege claims even though [Fed. R. Civ. P.] 26(b)(3) is phrased only in terms of the parties"); *Smith v. City of New York*, 854 N.Y.S.2d 44, 45 (App. Div. 2008) (quashing deposition subpoena for assistant district attorney in context of malicious prosecution case, where civil plaintiff sought testimony regarding motives for prosecution).

Mr. Cabot seeks documents and testimony from a former prosecutor regarding the circumstances of the criminal prosecution against him and, especially, the reasons the criminal complaint was dismissed.  *See Exhibit B*, March 8, 2014 Cabot E-Mail, p. 1; *Exhibit D*, Second March 8, 2014 Abdel Aleem E-Mail and Attached Subpoena; *Exhibit E*, Affidavit of Christopher Hurld, ¶ 5.  Requiring Mr. Bennett to testify about the decisions he made and actions he took as a prosecutor would compel the disclosure of the mental impressions and legal reasoning that the work product doctrine was designed to prevent.

**B.    The deliberative process privilege also protects Mr. Bennett's decision-making process from disclosure.**

"Federal courts have long recognized a policy against exploratory inquiries into the mental processes of governmental decision makers."  *Gomez v. City of Nashua*, 126 F.R.D. 432, 434 (D.N.H. 1989).  "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions."  *Id*.  The deliberative process privilege is "qualified, not absolute," and courts "are obliged to balance conflicting interests on a case-by-case basis."  *Id*. (citation omitted).  "The decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry."  *Id*. at 435.  In addition, even "factual information may also be privileged if it is inextricably intertwined with the process by which policy is made or if the manner of selecting or presenting

6

the facts would reveal the deliberative process." *Id*. Finally, "[c]ourts generally refuse to compel the deposition of a government witness if the plaintiff may obtain discovery by an alternative and less burdensome method to the government." *Id*. at 436. This is particularly pertinent when the witness is a prosecutor with the Attorney General's Office because "[s]ubjecting employees of that office to deposition absent the showing of a compelling need would violate public policy concerns that the time and resources of that office be conserved for the public business." *Id*.

Again, Mr. Cabot seeks to require Mr. Bennett to explain the reasons behind the dismissal of the complaint against him and whether Mr. Lewis or the State Police made statements to the SCDAO about whether there were videotapes or other records of the incident leading to Mr. Cabot's arrest. *See Exhibit B*, March 8, 2014 Cabot E-Mail, p. 1. His theory of the case seems to be that, because the criminal complaint was dismissed, the initial arrest must not have been supported by probable cause and the defendants therefore violated his civil rights. The reasons underlying any input Mr. Bennett may have had into the dismissal of the complaint are protected by the deliberative process privilege and the facts upon which he relied in coming to his legal conclusion are inextricably intertwined with his mental process. Finally, evidence about any statements Mr. Lewis or the State Police made regarding the existence of exculpatory evidence can be more easily obtained through discovery directly from those sources. The Court should quash the subpoena.

C.     **Massachusetts state law privilege provides absolute protection against disclosure for statements made to government officials to secure the enforcement of the law.**

For more than 100 years, the courts of Massachusetts recognized a privilege protecting statements made to government officials to secure the enforcement of the law. *See generally*

*Attorney Gen. v. Tufts*, 239 Mass. 458, 490-91, 132 N.E. 322, 327 (1921) ("It is a principle of law founded upon sound public policy and arising out of the creation and establishment of constitutional government that communications made to a district attorney in order to secure the enforcement of law are privileged and confidential in the sense that they cannot be revealed at the instance of private parties in aid of actions at law.").  When determining whether to recognize a state-law privilege, the Court of Appeals for the First Circuit asks whether the state courts would recognize the purported state-law privilege and whether the state's asserted privilege is "intrinsically meritorious".  *In re Hampers*, 651 F.2d 19, 22-23 (1st Cir. 1981).  In turn, the "intrinsically meritorious" test requires four additional inquiries: (1) whether the communications originated in a confidence that they would not be disclosed, (2) whether confidentiality is "essential to the full and satisfactory maintenance of the relation between the parties," (3) whether the relationship is one that "the community believes should be sedulously fostered," and (4) whether the injury to the relationship by the disclosure would be greater than the benefit thereby gained for the correct disposal of the litigation.  *Sterling Merchandising, Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 82-83 (D.P.R. 2006) (citation and internal quotation marks omitted) (*citing Hampers*).

To the extent that Mr. Cabot seeks testimony regarding statements made to Mr. Bennett to assist in the decision of whether to prosecute him or dismiss the complaint, the Court should apply the Massachusetts privilege and quash the subpoena.  Here, Massachusetts state courts have long recognized a privilege protecting statements made to state officials to secure the enforcement of the law.  *See generally Attorney Gen. v. Tufts*, 239 Mass. at 490-91, 132 at 327.[2]

_____

[2] Although the Massachusetts Public Records statute modified this privilege by creating a presumption that state records were subject to public inspection, an exception continues to exist

Statements made to law enforcement officials and government investigators have continued to be protected from disclosure by both common law and statute.  *See Bougas v. Chief of Police of Lexington*, 371 Mass. 59, 61–62, 354 N.E.2d 872 (1976) (holding that police investigation reports and letters from private citizens regarding an investigation were protected from disclosure); M.G.L. c. 4 § 7(f).  The relationship between witnesses, law enforcement officials, and district attorneys' offices should be "sedulously fostered" to aid in criminal investigations and prosecutions.  And subjecting such statements to disclosure at the whim of private parties could do more to chill public and intra-government cooperation than it would to aid Mr. Cabot in his claims in this matter, which relate to his initial arrest and filing of a complaint against him, not the fact that the charges against him were eventually dismissed.  The Court should quash the subpoena because Mr. Cabot seeks information that would be protected from disclosure by Massachusetts case law and statute.

>    **D.**    **The Court should quash the subpoena because Mr. Bennett was not properly served and was not provided with the required witness and mileage fees.**

Fed. R. Civ. P. Rule 45(b)(1) states: "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."  "The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required.  The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally."  9A FED. PRAC. & PROC. CIV. § 2454 (3d ed.).  A minority of courts, however, have broadened the interpretation of Rule 45(b) and held that personal in-hand service is not required.  *Id.*  Service is not proper and a subpoena may be quashed if witness and mileage fees are not

---

for law enforcement "investigatory materials".  *See* M.G.L. 4 § 7(f); *District Attorney for Norfolk Dist. v. Flatley*, 419 Mass. 507, 511-12, 646 N.E.2d 127, 130 (1995).

tendered in accordance with Rule 45. *See generally id*; *In re Dennis*, 330 F.3d 696, 704 – 05, (5th Cir. 2003).

Here, the subpoena at issue was not personally served on Mr. Bennett. It was sent electronically to his work e-mail account. See *Exhibit D*, Second March 8, 2014 Abdel Aleem E-Mail and Attached Subpoena; *Exhibit E*, Affidavit of Christopher Hurld, ¶ 2. And the required witness and mileage fees were not provided. *Id*. In addition to the substantive grounds raised above, the Court should quash the subpoena because it was not properly served.

## III.    CONCLUSION

A number of privileges fundamental to the proper functioning of our criminal justice system protect from disclosure the information Mr. Cabot seeks. And he did not comply with the procedural rules regarding the service of subpoenas. For the reasons stated herein, the Court should quash the subpoena.

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Christopher Hurld
Christopher Hurld
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 963-2630
BBO No. 664804

Dated:  March 21, 2014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon counsel for all parties by operation of the Court's Electronic Case Filing System on March 21, 2014.

<u>/s/ Christopher Hurld</u>
Christopher Hurld
Assistant Attorney General