# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASON CABOT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **13-11903-FDS** |
| | ) | |
| WILLIAM LEWIS; JOHN FALLON; and | ) | |
| DOES 1-5, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE

**SAYLOR, J.**

This is a civil rights action arising out of an incident at Logan Airport in Boston between plaintiff Jason Cabot and defendant William Lewis, a Massachusetts State Police Trooper.[1] Cabot was arrested, strip-searched, and charged with assault and battery on a police officer. Eventually, he accepted a disposition of pretrial probation that resulted in the dismissal of the charges. He now asserts federal and state civil rights claims, as well as various tort claims, against the officers involved in his arrest. He alleges, in essence, that he was arrested without probable cause and in retaliation for seeking to file a complaint against Officer Lewis. He also alleges that he was unreasonably strip-searched in violation of the Fourth Amendment.

Defendants have moved for summary judgment on the ground that all of plaintiff's

---

[1] Although plaintiff is proceeding *pro se*, he is a 2012 graduate of Harvard Law School and a member of the California bar.

claims are barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  For the reasons stated below, those motions will be granted in part and denied in part.

## I.   Background

### A.   Factual Background

The following facts are either undisputed or taken in the light most favorable to Cabot as the non-moving party.

On August 8, 2011, Jason Cabot was at Logan International Airport in Boston with a friend named Maksim Sigal.  Although not entirely clear from the record, it appears that Cabot became involved in some kind of incident in the terminal with a United Airlines employee and a Massachusetts State Trooper.  (Cabot Dep. at 97-99).

Cabot then went to the State Police barracks at Logan to obtain the name of the United Airlines employee and to file a complaint about Trooper.  (*Id.*).  Sigal drove him from the terminal to the barracks and waited in the car while Cabot went inside.  (*Id.* at 99-100).

Cabot entered the lobby of the barracks and approached defendant John Fallon, a Massachusetts State Police Sergeant, who was sitting behind the reception window.  (*Id.* at 101-02).  Cabot told Fallon that he had a negative encounter with a United Airlines employee as well as a state trooper at the airport, and that he wanted to get the name of the employee and to file a complaint against that trooper.  (*Id.* at 102-03).  Fallon told him to have a seat and that someone would be right with him.  (*Id.* at 103).  Cabot took a seat in the lobby.  (*Id.* at 104).

A short time later, Cabot received a phone call from Sigal, who was waiting in the car, asking how much longer he was going to be.  (*Id.* at 109).  Cabot alleges that during that call William Lewis, a Massachusetts State Police Lieutenant, entered the lobby from the parking lot and asked, in an aggressive tone, "Are you on the telephone with that guy outside?"  (*Id.* at 109,

111-13).  Cabot said that he was.  (*Id.* at 112).  Lewis then allegedly scoffed and said, "That's ridiculous."  (*Id.* at 112).  Lewis then proceeded into the secure area of the barracks.  (*Id.* at 113).

Following his encounter with Lewis, Cabot returned to the reception window and asked Lewis for his name and badge number.  (*Id.* at 117).  At that point, only Lewis was behind the reception window; Fallon was no longer present.  (*Id.*).  According to Cabot, Lewis allegedly yelled, "You want my name?  I'll give you my name" in an aggressive and threatening manner. (*Id.* at 118).  Lewis then walked from the secure area back into the lobby.  (*Id.*).

At that point, Cabot began videotaping the encounter with his cellphone.  (*Id.* at 123). According to Cabot, Lewis began yelling at him and threatened to arrest him.  (*Id.* at 125). Cabot alleges that he asked what he was going to be arrested for, and Lewis responded, "For aggravating me."  (*Id.*).  He further alleges that Lewis then demanded Cabot tell him his age. When Cabot refused to provide it, Lewis arrested him.  (*Id.*).[2]

Cabot asked what he was being arrested for.  Lewis responded, "You chest-bumped me." (*Id.* at 134).  Cabot denies doing so.  (*Id.*).  According to Cabot, the first physical contact between the two was when Lewis grabbed him, told him he was under arrest, and pushed him against the wall.  (*Id.*).

Fallon, who was not present during the argument, came into the lobby to assist Lewis with the arrest.  (*Id.* at 137).  According to Fallon, he was in the secure area of the barracks when he looked up and saw Cabot throw his shoulders and elbows back and chest-bump Lewis. (Fallon Dep. at 34).  Lewis also testified that Cabot chest-bumped him.  (Lewis Dep. at 73).

Following the incident, Lewis completed a police report and an Application for Criminal Complaint.  (Def. Lewis Ex. 3).  According to those documents, Cabot was arrested for assault

---

[2] According to Cabot, immediately before the arrest, his cellphone ran out of memory and stopped recording.  (*Id.* at 133).

and battery on a police officer.  (*Id.*).

Cabot was booked and escorted to a holding cell.  (Cabot Dep. at 147).  Fallon asked Cabot to stand in front of the holding cell and remove his clothes.  (*Id.* at 149).  Fallon then performed a visual strip-search of Cabot.  (*Id.*).  Following the search, Cabot got dressed again and was placed into the holding cell.  (*Id.*).

The Suffolk County District Attorney's office prosecuted Cabot for one count of assault and battery on a police officer under Mass. Gen. Laws. ch. 263 § 13D.  (Def. SMF ¶ 12).  He was arraigned on August 12, 2011.  (*Id.*).

On February 17, 2012, Cabot accepted a disposition of three months' pretrial probation pursuant to Mass. Gen. Laws. ch. 276, § 87.  (*Id.*).  The probation was unsupervised.  (Def. Ex. 5).  The district judge also ordered a "written letter of apology to be submitted forthwith."  (*Id.*).  No court costs or restitution were ordered. (*Id.*).[3]

Upon successful completion of the terms of that probation, the criminal case was dismissed on or about May 17, 2012.  (*Id.*).

### B.   Procedural Background

The complaint in this action was originally filed on August 9, 2013, with an amended complaint filed on June 20, 2014.  The amended complaint alleges ten claims, each against both defendants Lewis and Fallon:  deprivation of rights under 42 U.S.C. § 1983 (Count 1); deprivation of rights under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I (Count 2); battery (Count 3); assault (Count 4); false imprisonment (Count 5); false arrest (Count 6); intentional infliction of emotional distress ("IIED") (Count 7); defamation (Count 8); abuse of process (Count 9); and malicious prosecution (Count 10).

---

[3] The record does not include a transcript of the February 17 proceeding, and therefore it is unclear whether there was any colloquy between Cabot and the district judge.

Fallon and Lewis have separately moved for summary judgment on all claims.  In his opposition to defendants' motions for summary judgment, Cabot agreed to voluntarily dismiss the defamation claim as to both defendants as well as the malicious prosecution and abuse of process claims as to defendant Fallon.

Along with his opposition to Fallon's motion for summary judgment, Cabot filed a declaration in which he stated that he had been falsely arrested and that he had never chest-bumped Lewis.  He also provided a transcript of the recording that he had captured on his cellphone.  The declaration also explained his reasoning for accepting the disposition of pretrial probation, including advice he received from counsel.  Fallon has moved to strike that declaration.

## II.     Motion to Strike

### A.     Legal Standard

As a general matter, only evidence that would be admissible at trial may be considered by the court on summary judgment.  *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990).  Under Rule 56(e), affidavits—although not themselves admissible at trial—may be offered in support of, or opposition to, summary judgment if they set forth facts that would be admissible at trial.  *See* FED. R. EVID. 56(e).  A motion to strike is the proper vehicle for challenging the admissibility of evidence offered at summary judgment.  S*ee Casas Office Machines, Inc. v. Mita Copystart Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994).  The moving party must specify the objectionable portions of the opposing party's summary judgment materials along with the grounds for objection.  *Id.*  "Furthermore, a court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it."  *Id.*

### B.     Analysis

The statements included in plaintiff's declaration are irrelevant to defendants' motions for summary judgment.  Defendants have moved for summary judgment only on the ground that plaintiff's claims are barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  The issue before the Court, therefore, is the narrow question of whether plaintiff's acceptance of pretrial probation bars his claims.  For present purposes, it is irrelevant whether plaintiff was in fact arrested without probable cause, whether he in fact chest-bumped Lewis, or even why he accepted the disposition of pretrial probation.  The Court therefore will not rely on plaintiff's declaration in deciding the motions for summary judgment.  For that reason, the motion to strike will be denied as moot.

## III.    Motions for Summary Judgment

### A.     Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant would permit a rational fact finder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made,

the adverse party must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations and footnotes omitted).

The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but

instead must "present affirmative evidence."  *Id.* at 256-57.

### B. Analysis

Defendants have moved for summary judgment on the ground that plaintiff's acceptance

of pretrial probation bars all of his claims under the rule of *Heck v. Humphrey*, 512 U.S. 477

(1994).  Because the analysis under *Heck* turns on the nature of the claims asserted, *see Thore v.*

*Howe*, 466 F.3d 173, 179 (1st Cir. 2006), each of plaintiff's claims will be addressed in turn.

### 1. Section 1983 Claims (Count 1)

Courts have struggled for many years to ascertain when and under what circumstances

persons contending that they have been wrongfully convicted or imprisoned can bring § 1983

actions against the state actors responsible for their alleged wrongful convictions or

imprisonments.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that any

"challenge to the fact or duration of [one's] confinement" must be brought under the habeas

statute and not through a civil action under 42 U.S.C. § 1983.  *Id.* at 489.  In *Preiser*, state

prisoners brought a § 1983 action against officers of the New York State Department of

Correctional Services, alleging that the officers had acted unconstitutionally in depriving them of

good-conduct-time credits as a result of disciplinary proceedings.  *Id.* at 476.  The prisoners

sought injunctive relief to restore the credits, which, if received, would have resulted in their

immediate release from prison.  *Id.* at 476-77.  Because they were, in essence, claiming that they

were being held in prison unconstitutionally, the Supreme Court concluded that their challenge

had to be brought through a habeas proceeding.  *Id.* at 489.  The court noted, however, that its holding would not apply to prisoners seeking damages, as opposed to injunctive relief, for violations of federal law.  *Id.* at 494.  Where state prisoners seek damages, it concluded, they are "attacking something other than the fact or length of [their] confinement" and thus their claims do not fall within the core purpose of a habeas proceeding.  *Id.*

More than twenty years later, the Supreme Court decided *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the plaintiff was a state prisoner seeking damages under § 1983 for his allegedly unlawful arrest and conviction.  *Id.* at 479.  Drawing an analogy to the common-law tort of malicious prosecution—one element of which is the termination of prior criminal proceedings in favor of the accused—the court concluded that "damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" are not cognizable under § 1983 unless the conviction or sentence that forms the basis of his claim has been invalidated.  *Id.* at 486-87.  The court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 487.

The *Heck* court noted that the favorable-termination requirement for the tort of malicious prosecution "avoids parallel litigation over the issues of probable cause and guilt" and "precludes the possibility. . . of two conflicting resolutions arising out of the same identical transaction."  *Id.* at 484.   It also noted that the court had "long expressed similar concerns for finality and consistency" in criminal judgments and had "generally declined to expand opportunities for collateral attack.  *Id.* at 484-85.   That outcome is consistent with the purpose of § 1983, which

was not intended to permit collateral attacks on criminal convictions. *Id.* at 484 n.4.

Now, more than twenty years since *Heck*, considerable disagreement has developed as to the scope of its application. Two areas of uncertainty are of potential concern here. First, courts are divided as to whether *Heck*'s favorable-termination requirement applies when a § 1983 plaintiff is not in custody—either because he was never sentenced to prison or has already been released—such that he cannot seek habeas relief. Second, there is disagreement as to whether a disposition other than an ordinary conviction—such as a term of pretrial probation (as occurred here)—can constitute a "conviction" triggering the favorable-termination requirement of *Heck*.

As to the first issue, the law in the First Circuit is settled: the rule of *Heck* applies even if the plaintiff is not in custody and therefore cannot obtain habeas relief. In *Figueroa v. Rivera*, 147 F.3d 77 (1st Cir. 1998), the court held that the family of a prisoner who had died in custody while his habeas petition was pending could not bring a § 1983 action challenging the constitutionality of his conviction. *See id.* at 80. Because "annulment of the underlying conviction is an element of a section 1983 'unconstitutional conviction' claim," and his conviction had not been reversed or otherwise called into question, *Heck* barred the claim. *See id.* Thus, under the law of this circuit, the fact that plaintiff here is not in custody and therefore cannot obtain habeas relief has no bearing on *Heck*'s applicability to his claim.[4]

The second issue is considerably more difficult to resolve. By its terms, the *Heck* rule applies to actions "to recover damages for allegedly unconstitutional conviction or

---

[4] The Supreme Court has suggested, but has not held, that *Heck* does not apply under circumstances where habeas relief is unavailable. In his concurrence in *Spencer v. Kemna*, 523 U.S. 1 (1998), Justice Souter, joined by Justices O'Connor, Ginsburg, and Breyer, stated that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21. Justice Stevens's dissent in *Spencer* agreed, and thus five justices appear to have supported that position. *See id.* at 25 n.8. However, the Supreme Court has yet to squarely address the issue, and this Court is bound to follow the established law of the circuit.

imprisonment, or for other harm caused by actions whose unlawfulness would render a

conviction or sentence invalid." 512 U.S. at 486. Plaintiff contends that because he was never

convicted, much less sentenced or imprisoned, the *Heck* rule does not apply.

It is certainly true that by its literal terms, the *Heck* rule applies to "convictions." A

straightforward plea of guilty to a criminal charge would obviously fall within its scope.

Whether *Heck* applies, however, to other types of criminal dispositions is less obvious.

Many courts have held that the *Heck* rule applies to a plea of *nolo contendere*.[5] Other

courts have held that it applies to a plea pursuant to *North Carolina v. Alford*, 400 U.S. 35

(1970).[6] Some courts, including this one, have held that it applies where the plaintiff admitted to

sufficient facts and the court entered a continuance without a finding ("CWOF").[7] *Nolo*

*contendere* pleas and *Alford* pleas both result in convictions. And although an admission to

sufficient facts does not result in a formal conviction, it does require a formal admission, in open

court, to a set of facts that are sufficient to support a criminal conviction.

Here, the criminal charges against plaintiff were dismissed after he completed a term of

pretrial probation. Under Massachusetts law, a defendant may be placed on a term of pretrial

---

[5] *See Quinlan v. City of Pensacola*, 449 Fed. Appx. 867, 870 (11th Cir. 2011) (*nolo contendere* under Florida law); *Gomez v. City of Whittier*, 211 Fed. Appx. 573, 575 (9th Cir. 2006) (*nolo contendere* under California law); *Jackson v. Loftis*, 189 Fed. Appx. 775 (10th Cir. 2006) (*nolo contendere* and deferred sentence under Oklahoma law); *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275 (3d Cir. 2006) (*nolo contendere* under Pennsylvania law); and *Nicholson v. City of Westlake*, 20 Fed. Appx. 400 (6th Cir. 2001) (*nolo contendere* under Ohio law).

[6] *See, e.g., Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) (listing cases from the Seventh and Ninth Circuits); *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) (listing cases from the Second, Fourth, and Sixth Circuits). "An *Alford* plea occurs when a defendant enters a guilty plea without admitting guilt." *United States v. Caramadre*, 807 F.3d 359, 372 (1st Cir. 2015) (citing *United States v. Bierd*, 217 F.3d 15, 17 n.1 (1st Cir. 2000)).

[7] *See, e.g., Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 102 (D. Mass. 2009) (citing cases and holding that continuance without a finding is equivalent to conviction for Heck purposes). Such a disposition does not technically result in a "conviction" under Massachusetts law. *Commonwealth v. Villalobos*, 437 Mass. 797, 802 (2002). However, it is treated as one for many purposes under federal law. *See, e.g., id.* at 798 (noting that 8 U.S.C. § 1101(a)(48)(A) treats a CWOF as equivalent to a conviction for immigration purposes); *United States v. DiPina*, 178 F.3d 68 (1st Cir. 1999) (admission to sufficient facts treated as conviction under federal sentencing guidelines).

probation, without either pleading guilty or admitting to sufficient facts to warrant a finding of

guilty, with the understanding that the criminal charges will be dismissed after the successful

completion of a term of probation.  *See* Mass. Gen. Laws ch. 276, § 87; *Commonwealth v.*

*Millican*, 449 Mass. 298, 304-05 (2007).[8]  A disposition by pretrial probation does not, under

Massachusetts law, result in a conviction.  *See Commonwealth v. Rodriguez*, 441 Mass. 1002,

1003 (2004) (holding that disposition of pretrial probation is not a conviction or its functional

equivalent under Massachusetts law such that judicial warning regarding immigration

consequences is necessary).[9]

Courts are divided as to whether imposition of a pretrial probation (or an analogous

disposition, such as pretrial diversion) constitutes a "conviction" for purposes of the *Heck* rule.[10]

The Sixth, Tenth, and Eleventh Circuits have concluded that *Heck* does not bar a subsequent

lawsuit after disposition of a criminal case through pretrial diversion that ultimately results in

dismissal of criminal charges.  *See S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 637-39 (6th

Cir. 2008) (Kentucky juvenile pretrial diversion program); *Vasquez Arroyo v. Starks*, 589 F.3d

1091, 1095 (10th Cir. 2009) (Kansas pretrial diversion program); *McClish v. Nugent*, 483 F.3d

---

[8] Dismissal at the end of the probation term requires the consent of the Commonwealth.  *Millican*, 449 Mass. at 303.

[9] A "conviction" is generally defined under Massachusetts law to require a finding of guilt or a plea of guilty.  *See, e.g.*, Mass. Gen. Laws ch. 140, § 121.

[10] There is some inconsistency in the case law as to how to frame the issue of the applicability of the *Heck* rule to cases involving dispositions of pretrial probation.  The issue is sometimes framed as whether pretrial probation is a "favorable termination" such that subsequent § 1983 claims challenging the lawfulness of a conviction or sentence may proceed.  *See Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005).  The issue may also be framed as whether pretrial probation constitutes a "conviction" such that *Heck* applies at all.  The latter appears to be the more appropriate approach.  *See McClish v. Nugent*, 483 F.3d 1231, 1251 (11th Cir. 2007).  A favorable termination is only necessary if *Heck* applies, and *Heck* only applies as a potential bar to subsequent § 1983 claims if there has been a conviction or sentence—or something sufficiently analogous—the validity of which would be impugned by a successful § 1983 claim.  *See id.* ("The issue is not . . . whether [plaintiff's] participation in [pretrial intervention] amounted to a favorable termination on the merits.  Instead, the question is an antecedent one—whether *Heck* applies at all since [plaintiff] was never convicted of *any* crime.") (emphasis in original).

1231, 1250-51 (11th Cir. 2007) (Florida pretrial intervention program); *see also Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 537 (W.D. Ky. 2005) (Kentucky pretrial diversion program).

The Second, Third, and Fifth Circuits have reached the opposite conclusion. *See Miles v. City of Hartford*, 445 Fed. Appx. 379, 382 (2d Cir. 2011) (Connecticut accelerated pretrial rehabilitation program); *Gilles v. Davis*, 427 F.3d 197, 209-11 (3d Cir. 2005) (Pennsylvania "Accelerated Rehabilitative Disposition" program); *DeLeon v. City of Corpus Christi*; 488 F.3d 649, 655-56 (5th Cir 2007) (Texas deferred adjudication procedure). *See also Roesch v. Otarola*, 980 F.2d 850, 852-53 (2d Cir. 1992) (adjournment in contemplation of dismissal under New York law; case decided prior to *Heck*); *Taylor v. Gregg*, 36 F.3d 453, 455-56 (5th Cir. 1994) (federal pretrial diversion program; case decided prior to *Heck*).

The First Circuit has not yet addressed the issue. Two judges in this district, however, have concluded that the imposition of pretrial probation under Massachusetts law triggers the rule of *Heck* and bars a subsequent related claim under § 1983. *See Kennedy v. Town of Billerica*, 2014 WL 4926348 at *1 (D. Mass. 2014) (pretrial probation bars subsequent related § 1983 claim); *Cardoso v. City of Brockton*, 62 F. Supp. 3d 185, 186 (D. Mass. 2015) (same).

The courts that have concluded that the *Heck* rule does not apply to pretrial probation generally have done so based on the literal terms of *Heck*. As noted, *Heck* holds that when a successful § 1983 claim "would necessarily imply the invalidity of [a] conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S at 487.[11] Because the successful completion of a pretrial diversion program results in the dismissal of criminal charges, those courts have

---

[11] If "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

concluded that there is no underlying criminal "conviction" that could be invalidated by a successful § 1983 claim, and *Heck* therefore does not apply.

The view that *Heck* should be applied narrowly has at least two advantages:  it is faithful to the literal language of the opinion, and it imposes a bright-line rule that is relatively easy to apply.[12]  That approach is not, however, without its problems.  Most notably, the literal approach ignores, and appears to be inconsistent with, the purposes and rationale of *Heck*.  Those may be characterized, in simple terms, as threefold:  finality, consistency, and comity.

The first purpose of the favorable-termination requirement is finality:  that is, to promote the state's strong interest in the finality of criminal dispositions.  *See Heck*, 512 U.S. at 485.  The principle of finality "is essential to the operation of our criminal justice system."  *Teague v. Lane*, 489 U.S. 288, 309 (1989).  While pretrial probation is not a final judgment on the merits, it is a final disposition of criminal charges.  Under Massachusetts law, such a disposition must be accepted by a state court judge, and results in a restriction of freedom, albeit a very minor one.  A subsequent civil proceeding that seeks to establish a diametrically opposed set of facts (for example, that there was no probable cause to believe that a crime had been committed) obviously tends to undermine that finality.  Furthermore, for better or worse, our criminal justice system also depends on the willingness of prosecutors and defendants to enter into compromise

---

[12] It also has some practical advantages.  Suppose, for example, that plaintiff here was in fact arrested maliciously, and that the police officers' account of the episode is false.  Plaintiff would then have two basic options.  First, he could take the case to trial, with the attendant expense and inconvenience, and incur the (substantial) risk that the police officers would lie and that their testimony would be credited.  That might lead to a felony conviction, with the possibility of imprisonment and/or fine, and the certainty of unfavorable collateral consequences.  Alternatively, he could accept the offer of pretrial probation, under which he would not be required to acknowledge or admit any facts, and would receive a sentence of three months' unsupervised probation.  That term of probation would involve little to no inconvenience or burden, and the matter would then be dismissed with no criminal conviction or other legal consequence.  Because the second option is so appealing compared to the first, a likely consequence of the broader interpretation of *Heck* is that many instances of police misconduct will never be vindicated.

agreements. *See Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system."). Like plea agreements, pretrial probation is a form of compromise that is intended to resolve criminal charges efficiently. *See Cardoso*, 62 F. Supp. 3d at 187. The advantages of compromise resolutions, however, can be achieved only if they are given "a great measure of finality." *Blackledge*, 431 U.S. at 71. As with plea bargains, "permitting a party who does not contest the court's authority to punish him"—even if only by means of pretrial probation—"to bring a subsequent proceeding in which he is able to claim that his punishment was improper would undermine the finality of plea bargains [and pretrial probation] and jeopardize society's interest in a system of compromise resolution of criminal cases." *Olsen v. Correiro*, 189 F.3d 52, 69 (1st Cir. 1999). If dispositions of pretrial probation are not accorded finality—and if they leave open the possibility of continuing litigation and potential damages awards—prosecutors will be less likely to agree to them and they will be less available to defendants. *See id.*

The second concern is consistency. The Supreme Court made clear in *Heck* that the favorable-termination requirement was intended, among other things, to avoid the possibility of criminal and civil proceedings that produced inconsistent adjudications as to the same issues. *See Heck*, 512 U.S. at 484-85 (noting that the court has "long expressed concerns . . . for finality and consistency and has generally declined to expand opportunities for [civil] collateral attack [on criminal judgments"). If a civil proceeding seeks to reach a result that is fundamentally contrary to the result of a criminal proceeding—particularly on such basic issues as whether there was probable cause to believe that a crime had been committed—similar concerns will arise, even in the absence of a formal conviction.[13]

---

[13] In its discussion of the favorable-termination requirement of the tort of malicious prosecution, the *Heck* court quoted from a treatise stating that the requirement is intended to "avoid[] parallel litigation over the issues of

Finally, the *Heck* decision also appears to have been underpinned, in substantial part, by concerns of federal-state comity that caution against using a federal civil-rights action to impugn the validity of a state criminal proceeding. *See Heck*, 512 U.S. at 491 (Thomas, J., concurring) (noting that the decision "limits the scope of § 1983 in a manner consistent with the federalism concerns undergirding the explicit exhaustion requirement of the habeas statute"). At a minimum, federal courts should be hesitant to permit claims to proceed that are intended to negate or nullify the outcome of prior state proceedings.

The circumstances presented by this case highlight those same concerns. To begin, plaintiff entered into a bargain with the Commonwealth. He essentially consented to a term of probation in exchange for the dismissal of his criminal charges. In doing so, he "avoid[ed] the possibility of a formal guilty finding but . . . he also fore[went] a formal finding that his arrest lacked probable cause." *Kennedy*, 2014 WL 4926348 at *2. He now seeks to use a federal civil rights action to obtain the formal finding that he avoided in state court.

Furthermore, while plaintiff did not plead guilty or admit to sufficient facts, he did accept the state's authority to impose a term of probation. *Cf. Olsen*, 189 F.3d at 69 (holding that conviction based on plea of *nolo contendere* bars subsequent § 1983 claim because even though such a plea does not involve admission of guilt, it does communicate acceptance of conviction and sentence). A subsequent finding, through a federal civil-rights claim, that defendants were without probable cause to arrest him would completely undermine the state court's imposition of

---

probable cause and guilt." 512 U.S. at 484 (internal quotation marks omitted). In the typical case, the favorable-termination requirement means that no § 1983 action may be brought challenging a conviction unless that conviction has been overturned on direct appeal. Here, however, plaintiff was not actually convicted, and therefore there is no opportunity for a direct appeal. As a result, there is not a risk of *parallel* litigation. Nonetheless, as this case illustrates, there is an issue of *successive* litigation over issues of guilt and probable cause after a disposition by pre-trial probation. The same concerns regarding consistency apply to successive litigation as well as parallel litigation. While a successful § 1983 action would not result in an outcome contrary to a parallel direct appeal, it would result in an outcome contrary to the pretrial probation.

probation.

Finally, plaintiff accepted sanctions imposed by the state court, however minimal those sanctions might have been.  His liberty was curtailed, at least to some minor degree, during the three-month period of unsupervised probation.  Furthermore, the court ordered him to write a letter of apology.  While those sanctions, of course, seem trivial compared to a term of imprisonment, they were sanctions nonetheless:  a state court judge of competent authority concluded that it was an appropriate consequence under the circumstances.  Plaintiff formally accepted that consequence.  He now seeks, in substance, to prove that no consequence should have been imposed, because there was no basis for the arrest or the charge.  Even his letter of apology would be negated if he were successful; he essentially now contends that he did nothing meriting such an apology.

On balance, the considerations favoring the imposition of the favorable-termination rule outweigh the countervailing factors.  The Court therefore concludes that the favorable-termination requirement of *Heck* applies under the circumstances of this case. [14]

That conclusion does not fully answer the question of whether that requirement bars plaintiff's § 1983 claims.  The rule bars only those claims that would undermine the validity of his pretrial probation.  *See Heck*, 512 U.S. at 486-87.  Thus, a more detailed analysis of the relationship between plaintiff's individual theories for relief and his criminal case is required. *See Thore*, 466 F.3d at 180.

Plaintiff appears to assert three separate theories for relief:  first, he asserts that he was

---

[14] While the Court recognizes that there may indeed be some unfairness in precluding § 1983 relief where it does not appear that any other form of relief is available for plaintiff's allegedly unlawful arrest, that alone cannot lift *Heck*'s bar.  As the First Circuit held in *Figueroa*, permitting a § 1983 action to proceed simply because no other form of relief is available would "run afoul of *Heck*'s core holding."  147 F.3d at 81.

falsely arrested without probable cause; second, he asserts that he was arrested in retaliation for exercising his rights under the First Amendment; and third, he asserts that he was unreasonably strip-searched.  (Am. Compl. ¶¶ 72-74).  Each claim will be addressed in turn.

### a.   False Arrest Claim

Plaintiff first contends that the favorable-termination requirement of *Heck* is inapplicable to a claim for false arrest.  In *Heck*, the Supreme Court analogized the § 1983 claims to the tort of malicious prosecution, rather than false arrest, because the plaintiff there challenged not only his arrest but also the legality of his trial.  512 U.S. at 479, 484.  Because the favorable termination of the underlying criminal proceeding is an element of a common-law claim of malicious prosecution, the court, by analogy, adopted that same requirement in the § 1983 context.  *Id.* at 484.  Plaintiff contends that because his claim is premised on his false arrest, rather than malicious prosecution, the favorable-termination requirement is inapplicable.

Plaintiff's contention is premised on too narrow a reading of *Heck*.  *Heck* states that the favorable-termination requirement applies both to actions to recover damages for "allegedly unconstitutional convictions or imprisonment" as well as actions to recover damages "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid."  512 U.S. at 486-87.  As an example of the latter category, the court provided the hypothetical of a man convicted of resisting arrest who then sought to bring a § 1983 action against his arresting officers for the violation of his Fourth Amendment rights.  *Id.* at 486 n.6.  The favorable-termination rule applies to such a claim, the court explained, because in order to prevail on his § 1983 claim, he would have to negate an element of the offense for which he was convicted—namely, that his arrest was lawful.  *Id.*

That same reasoning applies here.  Plaintiff was arrested for assault and battery on a

police officer ("ABPO") for allegedly chest-bumping officer Lewis.  The elements of the crime

of ABPO are (1) a harmful or offensive touching (2) committed on a public employee engaged in

the performance of his duty.  *See Commonwealth v. Colon*, 81 Mass. App. Ct. 8, 20-22 (2011).[15]

The § 1983 claim here centers on plaintiff's arrest, which he contends was made without

probable cause.  To succeed on that claim, plaintiff would need to show that "defendants acted

unreasonably in arresting [him] and taking him into custody."  *Pena-Borrero v. Estremeda*, 365

F.3d 7, 13 (1st Cir. 2004).  To do that, he would have to show that he did not engage in any

harmful or offensive contact with Officer Lewis.  In other words, he would have to negate an

element of the offense for which he was arrested and for which he received a disposition of

pretrial probation.  The favorable-termination requirement of *Heck* therefore applies to plaintiff's

false-arrest claim.  For that reason, and the reasons stated above, defendants' motions for

summary judgment will be granted as to the false-arrest claim.

### b.  Retaliatory-Arrest Claim

Plaintiff also alleges that defendants violated his First Amendment rights by arresting,

detaining, and charging him in retaliation for asking for a police officer's name and stating that

he would file a complaint against the officer.  "[A]s a general matter the First Amendment

prohibits government officials from subjecting an individual to retaliatory actions, including

criminal prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  To

succeed on his First Amendment retaliation claim, plaintiff must show a causal connection

---

[15] Under Massachusetts law, there are three distinct forms of assault and battery with different elements. *See id.* at 17.  "Harmful battery is '[a]ny touching with such violence that bodily harm is likely to result.'"  *Colon*, 81 Mass. App. Ct. at 20 (quoting *Commonwealth v. Burke*, 390 Mass. at 482) (alteration in original).  "Reckless battery is a 'wilful, wanton, and reckless act [resulting] in personal injury to another.'"  *Id.* (quoting *Commonwealth v. Boyd*, 73 Mass. App. Ct. at 194-95) (alteration original).  Finally, "offensive battery" is "'an offensive touching' which is an 'affront to the victim's personal integrity.'"  *Id.* (quoting *Commonwealth v. Burke*, 390 Mass. at 483.  The exact form of assault and battery for which plaintiff was arrested is unclear from the record, but that level of detail does not affect the present analysis.

between defendants' alleged retaliatory animus and plaintiff's subsequent arrest. *See id.* at 259. To do that, he "need not prove that the defendant[s'] sole motive was to chill [his] protected expression." Rather, he "need only show that the [defendants'] intent or desire to curb the expression was the determining or motivating factor in making the arrest, in the sense that the officer would not have made the arrest 'but for' that determining factor." *Tatro v. Kervin*, 41 F.3d 9, 18 (1st Cir. 1994).

As a preliminary matter, criticizing a police officer and asking for his name and badge number is protected speech under the First Amendment. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014). Beyond that, plaintiff's retaliatory-arrest claim becomes more difficult.

As discussed above, *Heck* bars plaintiff from challenging whether there was probable cause for his arrest. In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court held that plaintiffs must prove the absence of probable cause as an element of a First Amendment retaliatory-*prosecution* claim. *Id.* at 265-66. Six years later, in *Reichle v. Howards*, 132 S. Ct. 2088 (2012), the Court held that, for purposes of qualified immunity, "[a] reasonable official . . . could have interpreted *Hartman*'s rationale to apply to retaliatory arrests." *Id.* at 2095 (emphasis added). However, the Court specifically stated that "we do not suggest that *Hartman*'s rule in fact extends to arrests. Nor do we suggest that every aspect of *Hartman*'s rationale could apply to retaliatory arrests." *Id.* at 2096.

Courts are divided as to whether *Hartman*'s no-probable-cause requirement applies to retaliatory-arrest claims. *See id.* at 2094-96 (noting circuit split). The First Circuit has not yet addressed the issue. However, this Court need not now resolve the difficult question of whether there is a right under the First Amendment to be free from a retaliatory arrest even where there was probable cause for that arrest. Whether or not such a right exists, the Supreme Court has

held that such a right is not "clearly established" for purposes of qualified immunity because reasonable officials could conclude that *Hartman* applies in the context of retaliatory arrests. *Reichle*, 132 S. Ct. at 2093, 2095.

Here, for the purposes of analyzing plaintiff's retaliatory-arrest claim, the *Heck* rule requires the conclusion that there was in fact probable cause for his arrest.  Defendants are therefore entitled to qualified immunity.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle*, 132 S. Ct. at 2093.  Under *Reichle*, it was not clearly established at the time of plaintiff's arrest that a retaliatory arrest that was supported by probable cause could violate the First Amendment.  *Id.* at 2093.  Summary judgment will therefore be granted as to the retaliatory-arrest claim.

### c.      Unreasonable Search Claim

Finally, plaintiff also alleges that defendants violated his Fourth Amendment right to be free of unreasonable searches by subjecting him to a strip-search following his arrest.  He alleges that after he was arrested by Lewis, he was booked and escorted to a holding cell where he was strip-searched by Fallon.  (Cabot Dep. at 147-49).

"*Heck* does not require a section 1983 plaintiff who challenges the conditions of his confinement, as opposed to the fact or length of his confinement, to demonstrate that his conviction has been impugned.  Such claims may go forward under section 1983, even if the plaintiff's complaint includes a separate, *Heck*-barred cause of action."  *Figueroa*, 147 F.3d at 82 (internal citation omitted).  Because plaintiff's challenge to the lawfulness of the alleged strip-search is not a challenge to the fact or length of his confinement, that claim is not barred by *Heck*.  Defendants' motions for summary judgment on Count 1 will therefore be denied as to

plaintiff's claim that he was strip-searched in violation of the Fourth Amendment.[16]

### 2.      State-Law Claims

The complaint also asserts a number of state-law claims.  Specifically, the complaint

asserts a claim under the Massachusetts Civil Rights Act ("MCRA") (Count 2), as well as

common-law tort claims for battery (Count 3), assault (Count 4), false imprisonment (Count 5),

false arrest (Count 6), intentional infliction of emotional distress (Count 7), abuse of process (9),

and malicious prosecution (Count 10).[17]

The application of *Heck* to state-law claims is an unsettled area of law.  *Compare*

*Turkowitz v. Town of Providence*, 914 F. Supp. 2d 62, 74-75 (D. Mass. 2012) ("Heck . . .

operates only to bar alleged civil rights violations under § 1983.  It does not prevent tort claims

based on state law.") (internal citation omitted) *with Aldrich v. City of Cambridge*, 2012 WL

6622495 at *8 & n.10 (D. Mass. 2012) (stating that "[i]t is well-settled that civil rights claims (as

well as tort claims) do no accrue unless the prisoner has obtained a 'favorable termination' of the

underlying conviction, parole, disciplinary action or condition of confinement" and citing cases).

The First Circuit has not directly addressed the issue.  *Cf. Figueroa*, 147 F.3d at 80, 83 (noting

that district court dismissed state-law claims on *Heck* grounds and affirming dismissal but on

basis that dismissal of pendent state-law claims was appropriate following dismissal of federal §

1983 claims).

---

[16] Lewis contends that he was not present at the time of the strip-search, which was performed by Fallon. (Def. SMF ¶ 11; Def. Lewis Mem. at 4).  It is unclear from the record whether the strip-search was performed as part of the Boston Police Department's routine booking procedures, at the direction of Lewis or some other higher-ranking officer, or at Fallon's discretion.  While a supervisor cannot be vicariously liable under § 1983 for the acts of another, he may be liable based on his own acts or omissions.  *See Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994).  In light of the questions of material fact as to the origin of the decision to strip-search plaintiff, summary judgment in favor of Lewis on this issue is inappropriate.

[17] As indicated above, plaintiff dismissed his claim for defamation (Count 8) as to both defendants, and his claims for abuse of process (Count 9) and malicious prosecution (Count 10) as to defendant Fallon only.

While the holding of *Heck* applies only to civil-rights claims brought under § 1983, its reasoning appears to apply with equal weight to state-law claims.  The favorable-termination requirement was intended to prevent collateral attacks on convictions "through the vehicle of a civil suit," 512 U.S. at 484 (internal quotation marks omitted), and was based on the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," *id.* at 486.  Thus, plaintiff's state-law tort claims are barred to the extent that success on those claims would undermine the validity of the disposition of the criminal proceeding.

### a.      MCRA Claim (Count 2)

It appears that the MCRA claim is premised on the alleged violations of the same rights as form the basis of his § 1983 claim:  specifically, the right to be free from seizure without probable cause, the right to not be retaliated against for protected speech, and the right to be free from unreasonable searches.  Thus, as with the § 1983 claims, defendants' motions for summary judgment will be granted as to the unreasonable seizure and retaliatory-arrest claims but denied as to the unreasonable search claim.

### b.      Battery Claim (Count 3)

The complaint alleges that defendants "committed a harmful and/or offensive touching on [plaintiff], without justification or [plaintiff's] consent."  (Am. Compl. ¶ 83).  A police officer is entitled to use reasonable force in conducting a lawful arrest, but may be liable for battery if he uses excessive force in conducting an arrest.  *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010).  The standard for determining whether force is reasonable for the purposes of a battery claim is "essentially the same" as the standard under the Fourth Amendment.  *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991).  Thus, the relevant inquiry is whether the officer's

actions were objectively reasonable in light of the facts and circumstances existing at the time. *Id.* at 367.

An excessive-force claim is barred by *Heck* only to the extent that it is inconsistent with the underlying criminal proceeding.  For example, a claim that the use of any force at all was excessive would require a plaintiff to show that there was not probable cause for his arrest and would therefore be barred by *Heck*.  *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007) (barring excessive force claim where plaintiff claimed he did nothing wrong and "provide[d] no alternative pleading or theory of recovery").  However, a claim that a police officer used excessive force in stopping a plaintiff's resistance or used excessive force after he had stopped resisting arrest would not be barred.  *Id.* at 657.

It is unclear from the complaint the conduct on which plaintiff intends to base his battery claim.  To the extent that plaintiff contends that the amount of physical force reasonably necessary to place him under arrest constituted a battery, that claim is barred by *Heck*.  However, to the extent he contends that defendants' use of force in placing him under arrest was unreasonable under the circumstances, that claim is not barred.  Furthermore, to the extent plaintiff contends that the strip-search performed by Fallon constituted a battery, that claim is not barred for the reasons stated above.  Thus, defendants' motions for summary judgment will be granted in part and denied in part as to Count 3.

### c.      Assault Claim (Count 4)

Count 4 alleges a claim of assault.  "[A]n assault at common law is an act done with the intention of causing 'a harmful or offensive contact with the person of the other . . ., or an imminent apprehension of such contact [if] . . . the other is thereby put in such imminent apprehension.'"  *Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430, 434 (2012) (quoting

RESTATEMENT (SECOND) OF TORTS § 21(1) (1965)) (alterations in original).

Again, it is unclear from the complaint exactly what conduct forms the basis of plaintiff's assault claim. As with his battery claim, the assault claim is barred by *Heck* to the extent that it is premised on conduct that was reasonably necessary under the circumstances to place him under arrest. However, it is not barred to the extent that it is premised on conduct not reasonably necessary under the circumstances to place him under arrest. Thus, defendants' motions for summary judgment will be granted in part and denied in part as to Count 4.

### d.     <u>False Imprisonment Claim (Count 5)</u>

Count 5 alleges a claim of false imprisonment. Under Massachusetts law, the elements of false imprisonment are "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." *Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003) (internal quotation marks omitted). A police officer may not be liable for false imprisonment if he had a legal justification for the confinement. *Id.* "Such justification exists if the officer had probable cause to arrest the suspect." *Id.* Because success on his false imprisonment claim would require plaintiff to show that his arrest lacked probable cause, that claim is barred. Defendants' motions for summary judgment will therefore be granted as to Count 5.

### e.     <u>False Arrest Claim (Count 6)</u>

Count 6 alleges a claim for false arrest. The elements of a false arrest claim are "(1) the defendant(s) intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant[s] had no privilege to cause the confinement." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995). Although probable cause is not an element of false arrest, the existence of probable cause defeats

a false arrest claim.  *See Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989) ("[A]t the foundation of all the claims [including false arrest and § 1983] is the necessity that the arrest be supported by probable cause."); *Felix*, 2004 WL 1775996 at * 2 n.6 (D. Mass. 2004) ("Although lack of probable cause is not an element to a false arrest claim, its absence provides a sufficient basis to dismiss a false imprisonment or false arrest claim.") (internal citation omitted).  Because success on his false arrest claim would require plaintiff to show that his arrest lacked probable cause, that claim is barred.  Defendants' motions for summary judgment will therefore be granted as to Count 6.

### f.        Intentional Infliction of Emotional Distress Claim (Count 7)

Count 7 alleges a claim for intentional infliction of emotional distress.  The elements of an IIED claim are "(i) defendant[s] intended to inflict emotional distress or knew or reasonable should have known that emotional distress was likely to result from such conduct; (ii) the conduct was 'extreme and outrageous,' 'beyond all possible bounds of decency,' and 'utterly intolerable in a civilized community'; (iii) the defendant[s'] conduct proximately caused plaintiff's emotional distress; and (iv) the distress was so 'severe that no reasonable man could be expected to endure it.'"  *Davignon v. Clemmey*, 322 F.3d 1, 8 n.2 (1st Cir. 2003) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976)).  To the extent that plaintiff's IIED claim is premised on the fact that defendants arrested him, that claim is barred by *Heck*.  Plaintiff cannot now contend that defendants arrested him without probable cause, and the simple fact of an arrest pursuant to probable cause does not give rise to an IIED claim.  *See Godette v. Stanley*, 490 F. Supp. 2d 72, 80-81 (D. Mass. 2007) (holding that arrest made with probable cause and without excessive force does not give rise to IIED claim).  However, to the extent that his IIED claim is based on Lewis's conduct prior to the arrest, any allegedly excessive force that was

used, or the strip-search, success on the claim does not require plaintiff to show that his arrest was made without probable cause and is therefore not barred.

### g.      Abuse of Process Claim (Count 9)

Count 9 alleges a claim for abuse of process.  The elements of an abuse of process claim are (1) the defendant used "process" (2) for an ulterior or illegitimate purpose (3) resulting in damage.  *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010). "[P]robable cause is irrelevant to an abuse of process claim."  *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 407-08 (2002).  "The gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."  *Heck*, 512 U.S. at 486 n.5.

Success on an abuse of process claim therefore does not require a plaintiff to impugn the validity the underlying criminal proceedings.  *Id.*  For that reason, plaintiff's abuse of process claim is not barred by *Heck*.  Because defendant has moved for summary judgment on the abuse of process claim only on *Heck*-related grounds, that motion will be denied as to Count 9.[18]

### h.      Malicious Prosecution Claim (Count 10)

Count 10 alleges a claim for malicious prosecution.  The elements of a common-law cause of action for malicious prosecution are "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice."  *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).  Because success on his malicious-prosecution claim would require plaintiff to show that his arrest lacked probable cause, that claim is barred.  Defendant's motion for summary judgment will therefore

---

[18] As noted above, the abuse of process claim is proceeding against defendant Lewis only.

be granted as to Count 10. [19]

## IV.   **Conclusion**

For the foregoing reasons, the motion of defendant John Fallon to strike plaintiff's declaration is DENIED as moot and the motions of defendants William Lewis and John Fallon for summary judgment are GRANTED in part and DENIED in part, as follows:

1. As to Count 1 (§ 1983), summary judgment will be granted as to the claims for false arrest and retaliatory arrest, but denied as to the unreasonable search claim;

2. As to Count 2 (MCRA), summary judgment will be granted as to the claims for false arrest and retaliatory arrest, but denied as to the unreasonable search claim;

3. As to Count 3 (battery), summary judgment will be granted to the extent plaintiff claims that defendants used force reasonably necessary to effect his arrest, but denied to the extent he claims defendants used excessive force or unreasonably searched him following arrest;

4. As to Count 4 (assault), summary judgment will be granted to the extent the claim is premised on conduct reasonably necessary to effect plaintiff's arrest, and denied to the extent the claim is premised on conduct not reasonable necessary to effectuate his arrest;

5. Summary judgment is granted as to Count 5 (false imprisonment);

6. Summary judgment is granted as to Count 6 (false arrest);

7. As to Count 7 (IIED), summary judgment is granted to the extent the claim is based on the fact that plaintiff was arrested, but otherwise denied;

8. Summary judgment is granted as to Count 9 (abuse of process); and

---

[19] As noted above, the malicious prosecution claim is proceeding against defendant Lewis only.

9.   Summary judgment is granted as to Count 10 (malicious prosecution).

**So Ordered.**


                                          /s/ F. Dennis Saylor
                                          F. Dennis Saylor IV
Dated:  March 15, 2017                    United States District Judge